UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03263-SEB-TAB |
| | ) | |
| SALIN BANK AND TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING MOTION FOR RECONSIDERATION

This litigation arises from one bank's mistaken transfer of a large sum of money to another bank who had a legitimate claim to those funds. On May 21, 2020, our Court granted summary judgment in favor of Defendant Salin Bank and Trust Company ("Salin") [Dkt. 63]. [1] Now before the Court is Plaintiff BMO Harris Bank N.A.'s ("BMO Harris") Motion for Reconsideration. [Dkt. 64]. For the reasons set forth herein, that motion is **denied.**

Background

The undisputed and material facts giving rise to this litigation are explicated in our Summary Judgment Order at Dkt. 63. In a summary fashion, BMO Harris, at the

---

[1] Though we granted Salin's Motion for Summary Judgment, we denied without prejudice its imbedded request for attorneys' fees, noting that a motion was necessary. We thus permitted Salin thirty days to file a proper motion for attorneys' fees. We noted that "[f]inal judgment shall enter by separate document at a subsequent date, depending on the resolution of the attorneys' fees request." Salin has since filed its Motion for Attorneys' fees; however, the briefing of this motion has been delayed. [Dkt. 71, Dkt. 77, Dkt. 81, Dkt. 84]. Accordingly, it is not yet ripe for our adjudication and final judgment has yet to be entered.

direction of its client, North & Maple, LLC ("North & Maple") initiated a wire transfer of $1.2 million of funds advanced to North & Maple pursuant to its lending relationship with BMO Harris. The funds were intended to reach Midwest Form Constructors, LLC ("Midwest"), who served as the general contractor on North & Maple's construction project. In contravention of North & Maple's directive to wire the funds to Midwest's bonding company, BMO Harris wired the funds to Midwest's account at Salin. At this time, Midwest was indebted to Salin and had granted to Salin the right to set off funds from Midwest's account. Pursuant to this contractual set-off authority, Salin withdrew the funds wired to Midwest's account and placed them into an account managed by Salin.

Following Salin's refusal to return the inadvertently transferred funds, BMO Harris initiated this lawsuit, advancing theories of conversion, replevin, and, unjust enrichment. In its complaint, BMO Harris alleged that it was the owner of those funds inadvertently transferred. Throughout this litigation, including at summary judgment, Salin has maintained that North & Maple, not BMO Harris, was the owner of the funds. Accordingly, Salin moved for summary judgment on all claims against, asserting that BMO Harris had no right to recover funds that did not belong to it. In response, BMO Harris presented a previously undisclosed theory regarding its entitlement to restitution. As we observed at summary judgment:

> BMO Harris does not dispute that the Funds erroneously transferred were owned exclusively by North & Maple at the time of the wire transfer. Rather, for the first time, BMO Harris asserts that it is seeking recovery not of the funds wired on March 23, 2018, but of funds it subsequently transferred to Atlas, Midwest's funds control agent. Specifically, BMO Harris now reveals in the course of its briefing in response to the motion for summary judgement that it issued a subsequent wire transfer, consisting of its own funds, to Atlas in an amount matching that of the

inadvertent wire transfer. "It is these funds  . . . that it now seeks to recover here," BMO Harris states. [Dkt. 53, at 19] . . .

In quick rejoinder, Salin asserts that BMO Harris's contention is flawed on several grounds. [Dkt. 54, at 10-12]. First, BMO Harris's Complaint never alleges that it issued a subsequent wire transfer, nor does BMO Harris plead that it was seeking to recover the funds transferred in this subsequent wire transfer. Rather, the Complaint carefully tethered each cause of action to the recovery of the funds that were mistakenly wired on March 23, 2018.

[Dkt. 63, at 9].

We shared in Salin's frustrations:

We agree with Salin on this issue, for several reasons, beginning with the fact that BMO Harris's Complaint obviously does not contain any factual allegations related to a subsequent transfer of funds. As Salin has aptly summarized, BMO Harris's Complaint is entirely based on its desire to recover the funds it inadvertently transferred and not some other transferred funds . . . BMO Harris cannot use summary judgment briefing to recast its claims against Salin.

[Dkt. 63, at 10]. We nonetheless considered the merits of BMO Harris's newly advanced theory, though we ultimately found it to fail for each claim presented. We noted for example, that replevin affords a remedy to those whose property is wrongfully retained by another. However, "Salin has not detained nor possessed the funds that BMO Harris now asserts it is seeking to recover, and BMO Harris has implicitly conceded that it did not have title to the funds initially transferred and retained by Salin." We concluded that BMO Harris's conversion claim was similarly problematic. To prevail on this cause of action, BMO Harris must show that Salin knowingly and intentionally exerted unauthorized control over BMO Harris's property. "But the funds transferred to and retained by Salin were not BMO Harris's property," given the uncontroverted fact that they were North & Maple's funds. Additionally, Salin never controlled those funds that

BMO Harris now asserted it was seeking to recover. Finally, we concluded that Salin was entitled to summary judgment on BMO Harris's unjust enrichment claim: "The cornerstone principles of restitution in the context of unjust enrichment is the restoration of a party who, at its expense, conferred a benefit to another . . . BMO Harris's initial wire transfer benefitted Salin at the expense of North & Maple; it therefore was North & Maple who would have been entitled to restoration."

<u>Discussion</u>

A motion for reconsideration "serves the limited function of correcting manifest errors of law or fact or presenting newly discovered evidence." *Thomas v. Johnston*, 215 F.3d 1330 (7th Cir. 2000). The Seventh Circuit has defined the proper role of motions for reconsideration as follows:

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir. 1990) (*quoted in Elder Care Providers of Indiana, Inc. v. Home Instead, Inc*., No. 1:14-CV-01894-SEB-MJD, 2017 WL 4287540, at *1 (S.D. Ind. Sept. 26, 2017)). It is within the sound discretion of the district court whether to grant a motion for reconsideration. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013).

Here, BMO Harris asserts that Salin and the Court "overlooked" certain factual arguments resulting in the improper entry of summary judgment in Salin's favor. Specifically, BMO Harris now argues:

> The facts establish that BMO Harris had a loan agreement with North & Maple . . . the parties do not dispute that the Wire should have consisted of an advance of proceeds under that loan. But when the fund control agent did not receive the funds from this draw because BMO Harris mistakenly sent them to Salin, North & Maple did not benefit from the [initial wire] because the subcontractors on the project were not paid. The [initial wire] cannot be considered loan proceeds. Instead, BMO Harris issued a subsequent transfer . . . [T]he subsequent wire consisted of the loan proceeds, establishing that the [initial wire] constituted BMO Harris's own funds.

The Court did not "overlook" this theory at summary judgment; rather, this theory was *never* advanced in BMO Harris's summary judgment briefing. BMO Harris did *not* argue, as it does now, that "because [North & Maple] did not benefit from the [initial wire], the funds were not [North & Maple's] money." As we noted in our Summary Judgment Order, "BMO Harris never disputes Salin's averment that the Funds were not BMO Harris's property 'before, during, or after' the initial wire transfer. BMO Harris has conceded the validity of Salin's arguments on this point by failing to respond."

Nor did BMO Harris assert in its summary judgment briefing that the subsequent wire transfer consisted of North & Maple's funds. In fact, this position directly contradicts the one proffered by BMO Harris at summary judgment, in relevant part, that: "BMO Harris issued a subsequent wire transfer, which consisted of its own funds, in the same amount as the erroneous wire transfer. Those are the funds BMO Harris seeks to recover here." [Dkt. 53, BMO Harris's Response in Opposition to Salin's Motion for Summary Judgment, at p. 2-3]. BMO Harris stressed this theory throughout its briefing.

[*Id.*, at p. 7 ("This subsequent wire consisted of BMO Harris's own funds."), p. 17 ("BMO Harris issued a subsequent wire, in the amount of $1,199,443.07, to the funds control agent . . . This wire consisted of BMO Harris's own money."), pp. 18-19 (BMO Harris undisputedly issued a subsequent wire transfer to the funds control agent in the amount of $1,199,443.07 . . . It is these funds—BMO Harris's funds—that it now seeks to recover here."), p. 19 (BMO Harris . . .  issued a subsequent wire in the amount of $1,199,443.07. That subsequent wire consisted of BMO Harris's own funds . . .[I]t sent its own funds to the funds control agent about a week after it sent the Wire Transfer.")

BMO Harris now attempts to distance itself from this theory and (once again) recraft the factual and legal bases for its claims. However, a motion for reconsideration is not available to introduce new evidence or arguments that could have been raised in the initial briefing. *See Direct Enterprises, Inc. v. Sensient Colors LLC*, No. 1:15-CV-01333-JMS-TAB, 2018 WL 1070288, at *2 (S.D. Ind. Feb. 23, 2018) *Elder Care Providers*, 2017 WL 4287540, at *3; *Walker v. Trailer Transit, Inc.*, No. 1:13-CV-00124-TWP, 2015 WL 735766, at *2 (S.D. Ind. Feb. 19, 2015), *aff'd*, 824 F.3d 688 (7th Cir. 2016). This is precisely what BMO Harris seeks to do, and its Motion for Reconsideration is unavailing when its purposes and effect is to give it a second bite of the apple following an adverse ruling. Accordingly, the Court denies this request.

Before concluding, we must address BMO Harris's alternative requested relief. BMO Harris asserts that if it is not entitled to recover the funds, then North & Maple must be deemed the "real party in interest." Accordingly, BMO Harris asserts that North & Maple must be provided with a reasonable opportunity to join this action and to seek

6

recovery of the funds, in accordance with Federal of Civil Procedure 17(a)(3). And, if North & Maple is joined, then this Court is divested of its diversity jurisdiction and the matter must be dismissed without prejudice, says BMO Harris.

Salin asserts that it is "too late" for BMO Harris to invoke Rule 17(a)(3), given that it first objected to BMO Harris's legal interests at the outset of this litigation in its Answer.

Aside from the belated nature of the request, Rule 17(a)(3) does not appear to be applicable in these circumstances. Rule 17(a) requires that "an action must be prosecuted in the name of the real party in interest." "The 'real party in interest' is the person who possesses the right or interest to be enforced through litigation[.]" *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010). Subjection (3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

"[T]he purpose of this procedural rule is to protect the defendant against a subsequent action by the party actually entitled to recover." *RK Co.*, 622 F.3d at 850. As the advisory committee notes explain:

> The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc., is added simply in the interests of justice. In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.

In furtherance of its purpose, Rule 17(a)(3) is often in play alongside debates over whether an individual seeking to enforce a legal interest belonging to himself or others can file a lawsuit in his own name or whether some other representative of the legal interest is required to sue on behalf of the individual who possesses that interest. *See In re Peregrin,* 2012 WL 5939266, at *2 (Bankr. N.D. Ill. Nov. 28, 2012). For example, Rule 17(a)(3) has been invoked when a party files bankruptcy and his claim becomes the trustee's, *id.*, or when state law requires the administrator of a deceased individual's estate to bring a wrongful death claim, *Sowell v. Dominguez,* 2011 WL 294758, at *8 (N.D. Ind. Jan. 26, 2011), or when a contractual right has been assigned, *Agri-Best Holdings, LLC v. Atlanta Cattle Exch., Inc.*, 812 F. Supp. 2d 898, 902 (N.D. Ill. 2011), or when an insurance company has paid the debts of its insured. *In re Meyer*, 120 F.3d 66, 69 (7th Cir. 1997). Here, however, there has been no indication that any such legal privity or relationship exists between BMO Harris and North & Maple.[2]

Consider the following passage from the advisory committee notes to the 1966 Amendment to Rule 17:

> The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that . . . when an action is filed by the personal representative of John Smith, of Buffalo, in

---

[2] As we noted at summary judgment: "BMO Harris ever so subtly alludes to being a subrogee of its client but omits from its briefing any explicit or cogent argument to that effect. Moreover, it is unclear how the doctrine of subrogation, which 'arises from the discharge of a debt and permits the party paying off a creditor to succeed to the credit's rights in relation to the debt,' is applicable here. *Bank of New York v. Nally*, 820 N.E.2d 644, 651 (Ind. 2005). And, as Salin notes, 'there is no evidence before the Court that North & Maple assigned any claim to the Funds it may have to BMO Harris.'"

the good faith belief that he was aboard [an airplane crash in which all aboard were killed], that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, an actual victim, can be substituted[.]

Put another way, "Rule 17(a) does not apply to a situation where a party with no cause of action files a lawsuit." *In re Hearing Help Express, Inc.*, 575 B.R. 175, 189 (Bankr. N.D. Ill. 2017). This is precisely what BMO Harris seeks to do here. We have determined BMO Harris cannot succeed on the merits of its claims against Salin. This is plainly not a situation, as is typical when Rule 17(a)(3) is invoked, where we determined that BMO Harris was simply the wrong party to bring this lawsuit. In simplest terms, this a not a scenario where claims potentially held by North & Maple (a non-financial institution who suffered damages as the result of another's error) are identical to those claims brought by BMO Harris (a financial institution who committed that error) such that we can hold that North & Maple is the "real party in interest" to prosecute BMO Harris's complaint.[3] We thus disagree with BMO Harris's contention that North & Maple could be simply substituted as the plaintiff in this action in light of how BMO Harris has framed the legal issues. Though both may seek recovery of the funds transferred, our determination on the merits of BMO Harris's claims—specifically our conclusion that BMO Harris has no right to restitution of funds that did not belong to it—has no bearing on the viability of any claims brought by North & Maple such that the res judicata

---

[3] Our summary judgment order as well as our order on Salin's Motion for Judgment on the Pleadings spoke extensively to the role of the Uniform Commercial Code in resolving disputes between financial institutions. The fact that North & Maple is not a financial institution is not an immaterial distinction in terms of the legal remedies it may pursue against Salin.

concerns reflected in Rule 17(a)(3) would be implicated. *See Jarrard v. CDI Telecommunications, Inc*., 408 F.3d 905, 916 (7th Cir. 2005).

To the extent Rule 17(a)(3) is applicable, we agree with Salin that it is "too late." As noted above, Rule 17(a)(3) allows for a reasonable time "after objection" for ratification, joinder, or substitution of the real party in interest. "What constitutes a 'reasonable time' for purposes of Rule 17 is a matter of judicial discretion that depends on the facts of each case." *Smith-Taylor v. Bridgecrest Credit Co*., LLC, 2018 WL 3094080, at *2 (S.D. Ill. June 22, 2018). On November 16, 2018, Salin filed its answer to the complaint in which it raised its affirmative defense that BMO Harris was not a real party in interest. Despite this defense, BMO Harris never sought to take advantage of Rule 17(a)(3) by moving for joinder, ratification, or substitution. Instead, it waited eighteen months and until the claims were resolved on the merits to raise the issue. This is an unreasonable delay, giving every appearance of an end run around our adverse summary judgment ruling. *Metal Forming Techs., Inc. v. Marsh & McLennan Co*., 224 F.R.D. 431, 437, 2004 WL 2378795 (S.D. Ind. 2004) (waiting fourteen months following objection raised in affirmative defense was unreasonable) (collecting cases).

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Reconsideration [Dkt. 64] is **DENIED.**

IT IS SO ORDERED.

Date:        8/21/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

10

Distribution:

Jacob V. Bradley
QUARLES & BRADY LLP (Indianapolis)
jacob.bradley@quarles.com

Darren Andrew Craig
FROST BROWN TODD LLC (Indianapolis)
dcraig@fbtlaw.com

Lucy Renee Dollens
QUARLES & BRADY LLP (Indianapolis)
lucy.dollens@quarles.com

William T. Repasky
FROST BROWN TODD LLC (Louisville)
brepasky@fbtlaw.com

Emily Schmale
FROST BROWN TODD LLC (Indianapolis)
eschmale@fbtlaw.com